1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
3  7677 Oakport Street, Suite 1120
   Oakland, California 94621
4  Telephone: (510) 839-5200
   Facsimile: (510) 839-3882
5  john.burris@johnburrislaw.com
   bnisenbaum@gmail.com
6

7  Attorneys for Plaintiff

8
                    UNITED STATES DISTRICT COURT
9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11
   JANE DOE,                            Case No. C07-06337
12
              Plaintiff,                COMPLAINT FOR DAMAGES FOR
13                                       VIOLATION OF CIVIL RIGHTS.
                                         JURY TRIAL DEMANDED
14         vs.

15 CITY OF OAKLAND, a municipal corporation;
   WAYNE TUCKER, in his capacity as Chief of
16 Police for the CITY OF OAKLAND; JOHN
   CHIN, individually and in his capacity as a
17 police officer for the CITY OF OAKLAND;
   KIRK COLEMAN, individually and in his
18 capacity as a police officer for the CITY OF
   OAKLAND; and, DOES 1-25, inclusive,
19

20               Defendants.
                                      /
21

22
                            JURISDICTION
23
         1.      This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction
24
   is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The
25
   unlawful acts and practices alleged herein occurred in the County of Alameda, California, which is
26
   within this judicial district.
27

28

PARTIES

2.      Plaintiff herein, fictitiously-named JANE DOE ("DOE"), is readily recognizable as an African-American female and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

3.      Defendant City of Oakland ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California.  The City operates under its authority the Oakland Police Department.

4.      At all times mentioned herein, Defendant WAYNE TUCKER ("TUCKER") was employed by Defendant CITY as Chief of Police for the Defendant CITY.  He is being sued in his official capacity as Chief of Police for the City.

5.      At all times mentioned herein, Defendant officer JOHN CHIN ("CHIN") was employed by Defendant CITY as a police officer.  He is being sued individually and in his official capacity as a police officer for the City.

6.      At all times mentioned herein, Defendant officer KIRK COLEMAN ("COLEMAN") was employed by Defendant CITY as a police officer.  He is being sued individually and in his official capacity as a police officer for the City.

7.      Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein.  Plaintiff will amend her complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

8.      In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City.  In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

9.      Plaintiff is required to comply with a government code claim requirement for State causes of action. Plaintiff has complied with all requirements.

## STATEMENT OF FACTS

10.     On March 16, 2007, at about 3:00 p.m., Plaintiff, fictitiously named as JANE DOE herein, a 23 year-old African-American woman, was stopped in her Green 2006 Nissan Altima at 29th Street and Martin Luther King, Jr. Blvd. in Oakland, California by Defendant Oakland Police Department Sergeant KIRK COLEMAN and Defendant Oakland Police Officer JOHN CHIN, who rode together in an unmarked black Oakland Police Department "task force" vehicle. Plaintiff had not violated any traffic laws and was unaware of any legal basis for the officers to pull her over. Nevertheless, Plaintiff pulled over as soon as she heard the task force vehicle's siren behind her.

11.     Less than one hour before Plaintiff was pulled over by Defendant Officer COLEMAN and Defendant Officer CHIN, Plaintiff's mother had placed a call to the Oakland Police Department and reported to dispatch that a number of people were on the corner of Apgar Street and Martin Luther King, Jr. Boulevard. Although Plaintiff was unaware that her mother had made this particular phone call, Plaintiff's family-members have made numerous phone calls to the Oakland Police Department prior to the subject incident of March 16, 2007, to report drug-dealing in the area near their home. Plaintiff and her mother are known to numerous Oakland Police Department officers as being cooperative in helping to report and reduce crime in the area. Plaintiff and her mother have no involvement in the illicit drug activity that plagues their neighborhood, other than to report to police when they observe such illicit activity occurring. Plaintiff's mother is actively involved in their local neighborhood watch program, and has been encouraged by members of the Oakland Police Department to report illicit activity occurring in the neighborhood to the Oakland Police Department by calling certain telephone numbers provided by the police department. Plaintiff is a Skyline High School graduate who works full-time for Kodak Easy Share Gallery in Emeryville.

12.     One week prior to the March 16, 2007 subject-incident, Plaintiff had oral surgery to remove two upper wisdom teeth. At the time of the subject-incident Plaintiff still had stitches in her gums. Plaintiff's gums were swollen from the surgery.

13.     Plaintiff left her house shortly before 3:00 p.m. on March 16, 2007 and got into her vehicle, which was parked across the street from her residence on Apgar Street. Plaintiff intended to drive to a friend's

house where Plaintiff and several friends spend each Friday. Plaintiff had called her friend before she left the house to let her know she was on the way. The weather was nice, and Plaintiff wore dark blue cuffed Bermuda shorts.

14.    As Plaintiff walked toward her parked car, a teenage boy approached her and introduced himself as "Pootie." Plaintiff did not know Pootie, who continued to talk to Plaintiff. Pootie persisted after Plaintiff entered her car. Pootie leaned into Plaintiff's window and offered to give Plaintiff his phone number. Plaintiff politely declined Pootie and told him that he was too young for her. Pootie got the message and walked away from the car.

15.    Plaintiff drove toward West Street to get on the freeway on-ramp located near 30th and West Grand Avenue, to go toward her friend's house in East Oakland. Plaintiff was pulled over by Defendant Officers COLEMAN and CHIN near King and 29th Street, several blocks from her home. Several "task force" and marked Oakland Police Department black and white vehicles arrived at the scene shortly after Plaintiff pulled over.

16.    An African-American Oakland Police officer, who Plaintiff later learned was Defendant Officer KIRK COLEMAN, walked up to Plaintiff's car accompanied by Defendant Officer JOHN CHIN. Both Defendant Officers COLEMAN and CHIN had been in the task force vehicle that initiated the stop of Plaintiff. Defendant Officer COLEMAN incorrectly told Plaintiff that she did not have her seat-belt on. Plaintiff wore her seatbelt appropriately, and told the officer that she did indeed have her seatbelt on. Without further explanation, Defendant Officer COLEMAN ordered Plaintiff to exit the vehicle and Plaintiff complied. Defendant Officer COLEMAN then handcuffed Plaintiff with her hands behind her back. Defendant Officer CHIN wore a pair of latex gloves and searched Plaintiff thoroughly. Plaintiff repeatedly asked the officers what she had done and asked why the officers were handcuffing her. Plaintiff asked why the officer were searching her, but the officers did not respond. Defendant Officer CHIN felt the inside part of Plaintiff's legs and felt around the cuffs of Plaintiff's Bermuda shorts. No contraband was recovered. To Plaintiff's shock, Defendant Officer CHIN put his hands on Plaintiff's belt and pulled the belt forward. Plaintiff was stunned

and feared that Defendant Officer CHIN intended to go into her shorts. Defendant Officer CHIN searched around the waistband and pockets of Plaintiff's shorts, but did not reach inside Plaintiff's shorts.

17.    Defendant Officer COLEMAN asked Plaintiff: "What were you doing talking to that boy?" Plaintiff accurately told him that she did not even know the boy. Defendant Officer COLEMAN placed Plaintiff in the rear of his police vehicle and asked Plaintiff if she had a driver's license, insurance, and registration for the vehicle. Plaintiff responded affirmatively and offered to retrieve the requested documents. Defendant Officer COLEMAN told her not to bother, and that the police would get the documents from the vehicle. Several unknown Oakland Police officers then searched and ransacked Plaintiff's vehicle. The officers did not open the trunk or the hood of the vehicle, but thoroughly searched the cabin of Plaintiff's vehicle.

18.    Defendant Officers COLEMAN and CHIN sat down in the front of the police vehicle and asked Plaintiff if she had ever been arrested before. Plaintiff had once been arrested on suspicion of shoplifting, and she told the officers as much. The officers did not seem concerned by the one prior arrest. The officers ran Plaintiff's name on their in-car computer, presumably for a warrants check, and verified that Plaintiff had a clean record.

19.    Both Defendant Officers COLEMAN and CHIN persisted in questioning Plaintiff about the young man who had accosted her as she got into her parked car. Plaintiff repeated again that she did not know the boy. Eventually, Defendant Officer COLEMAN exited the vehicle and spoke to other officers at the scene. Plaintiff told Defendant Officer CHIN that she was extremely embarrassed by the humiliating public spectacle created by the officers search of her vehicle and by her detention. Defendant Officer CHIN told Plaintiff that she had nothing to worry about as long as there was "nothing" in her car.

20.    Defendant Officer COLEMAN then told Plaintiff that the officers had found "crumbs" in her car. In fact, Plaintiff's car had been washed and cleaned days before the incident. Plaintiff had no factual basis to accept Defendant Officer COLEMAN's representation that "crumbs" of any illegal substance had been found in her car. Plaintiff's car was clean before the officers ransacked it, and there was no contraband or illegal substance in Plaintiff's car.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES - 5

21.     Defendant Officer COLEMAN then attempted to intimidate Plaintiff by telling her: "I believe 50% of your story. You're going to have to give me something." Defendant Officer COLEMAN appeared to Plaintiff to be attempting to extort information from her. Plaintiff told Defendant Officer COLEMAN that if the officers had found crumbs, it was only because the officers had put them there. Plaintiff asked Defendant Officer COLEMAN what the alleged crumbs were supposed to be.

22.     Defendant Officer COLEMAN then made thinly-veiled accusations against Plaintiff, including: "What are you doing driving a car like this. What do you do for a living? How old are you? I can arrest you for possession for sales. Did you swallow it? We're waiting on the tester kit. You better not be lying."

23.     Plaintiff asked Defendant Officer CHIN what Defendant Officer COLEMAN was doing. Defendant Officer CHIN asked Plaintiff if she had "worked out a deal" with Defendant Officer COLEMAN. It was clear to Plaintiff that the officers had no idea that she was in fact a person who freely and voluntarily cooperated with the police in their law enforcement efforts in her neighborhood. Plaintiff was offended that the officers felt the need to try and blackmail her when she already assisted officers when she had information.

24.     Defendant Officer COLEMAN removed Plaintiff from the rear of the police vehicle and removed the handcuffs. Plaintiff told Defendant Officer COLEMAN that she was upset. She walked to her car and observed police officers scooping something from the backseat floor of her car. Plaintiff was shocked, because there had been nothing to scoop in her car when she was pulled over by Defendant Officers COLEMAN and CHIN. Plaintiff cried in frustration while Defendant Officer COLEMAN told her that he needed to take her picture. Defendant Officer COLEMAN also told Plaintiff that he may need her to testify and asked if she would testify. Plaintiff asked why she would need to testify.

25.     Defendant Officer COLEMAN ordered Plaintiff to open her mouth. He asked Plaintiff if she had been punched in her face. Plaintiff told the officer that her wisdom teeth had just been removed. Defendant Officer COLEMAN maliciously and falsely told Plaintiff that she had white powder on her face. He asked Plaintiff if she had swallowed drugs. Plaintiff was insulted and told Defendant Officer COLEMAN that

he could drug test her then and there, that she did not do drugs. Sergeant COLEMAN did not accept Plaintiff's offer to be drug-tested.

26.    Plaintiff called her mother and told her that officers were attempting to link her to some alleged drugs. Plaintiff's mother came outside of her house and saw that police officers had detained a number of people near her home on Apgar Street. Plaintiff's mother approached some officers and asked if they knew where her daughter was. The officers told Plaintiff's mother that Plaintiff had been arrested. Plaintiff's mother drove to King and 29th Street, where she saw her daughter and several Oakland Police officers, including Defendant Officer COLEMAN, along with a crowd of people who had gathered.

27.    Plaintiff told her mother what had transpired, and Defendant Officer COLEMAN told Plaintiff and her mother that if the crumbs allegedly recovered by the officers tested positive for drugs that a warrant would be issued for Plaintiff's arrest. Plaintiff walked away in tears, and Defendant Officer CHIN told her not to worry, that Sergeant COLEMAN was only trying to scare her. Plaintiff replied, "well, he did a good job of that." Defendant Officer CHIN then took a statement from Plaintiff regarding her contact with "Pootie." While the statement was correct, it was incomplete in that it did not address the stop and search complained of by Plaintiff. Plaintiff signed the statement prepared by Defendant Officer CHIN and was released at the scene without a citation. Plaintiff's mother told the officers that she had called the police to report suspected drug dealers in the area shortly before her daughter had left the house. Defendant Officer COLEMAN told Plaintiff's mother, "That's what sent us out here."

28.    The detention, search, and arrest of Plaintiff described herein were done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

29.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public search conducted inappropriately by a male officer without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such unreasonable searches.

DAMAGES

30.    As a proximate result of Defendants' conduct, Plaintiff suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of her sense of security, dignity, and pride as a United States citizen.

31.    Plaintiff was illegally searched by the defendant officers noted herein without any just provocation or probable cause.

32.    The conduct of defendant officers was malicious, wanton, and oppressive.  Plaintiff is therefore entitled to an award of punitive damages against said defendant police officers.

33.    Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law.  Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of her civil rights.

FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against Defendants CHIN, COLEMAN and DOES 1-10)

34.    Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 33 of this Complaint.

35.    In doing the acts complained of herein, Defendants CHIN, COLEMAN and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

a.    The right to be free from unreasonable searches and seizures, as guaranteed by the

Fourth and Fourteenth Amendments to the United States Constitution;

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendants TUCKER, CITY OF OAKLAND, DOES 11-25)

36.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 35 of this Complaint.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES - 8

37.    As against Defendant CITY, TUCKER, and/or DOES 11-25 in his/their capacity as official policy-maker(s) for the CITY OF OAKLAND, Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of its citizens.

38.    Plaintiff are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, TUCKER, DOES 11-25, and each of them, to repeated acts of police misconduct, including intrusive, humiliating, public searches, including intimate searches of female detainees by male police officers, without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the Defendant CITY, DOES 11-25, and each of them.

39.    The injuries and damages to Plaintiff as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY, TUCKER, DOES 11-25, and each of them.

40.    Plaintiff is further informed and believes and thereon alleges that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant OAKLAND Police Department..

41.    Plaintiff is further informed and believes and upon such information and belief alleges that Plaintiff's damages and injuries were caused by customs, policies, patterns or practices of Defendant CITY, TUCKER, DOES 21-25, and each of them, of deliberate indifference in the

training, supervision and/or discipline of Defendants CHIN, COLEMAN and DOES 1-10, and/or each of them.

42.    The aforementioned customs, policies and practices of Defendant CITY, TUCKER, DOES 11-25, and each of them, resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to, the following:

    a.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

43.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(Assault and Battery)
(Against Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive)

44.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 43 of this Complaint.

45.    Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive, placed Plaintiff in immediate fear of sexual battery, and severe bodily harm, without any just provocation or cause.

46.    These defendants' conduct was neither privileged nor justified under statute or common law.

47.    As a proximate result of defendants' conduct, Plaintiff suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Against Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive)

48.    Plaintiff reallege and incorporate by reference herein paragraphs 1 through 47 of this Complaint.

49.    The conduct of Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.  Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Plaintiff.

50.    As a proximate result of Defendants' willful, intentional and malicious conduct Plaintiff suffered severe and extreme mental and emotional distress.  Therefore, Plaintiff is entitled to an award of punitive damages as against said defendants.  Plaintiff has suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(Violation of Civil Code Section 51.7)
(Against CHIN, COLEMAN and DOES 1-10, inclusive)

51.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 50 of this complaint.

52.    Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive, as described herein, was motivated by racial prejudice and/or sex bias against Plaintiff.  Plaintiff is and was readily recognizable as an African-American female.  In engaging in such conduct, Defendants violated Plaintiff's rights under California Civil Code Section 51.7 to be free from violence, or intimidation by threat of violence committed against her because of her race and/or sex.

53.    Under the provisions of California Civil Code Section 52(b), Defendants are liable for each violation of Civil Code Section 51.7 for punitive damages, an additional $25,000.00, and for reasonable attorney's fees.

54.    As a proximate result of Defendants' wrongful conduct, Plaintiff suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Against CHIN, COLEMAN and DOES 1-10, inclusive)

55.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 54 of this Complaint.

56.    The conduct of Defendant Officers CHIN, COLEMAN and DOES 1-10, inclusive, as described herein, who were acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that they interfered with Plaintiff's exercise and enjoyment of her civil rights and exceeded the scope of any reasonable search and/or detention of Plaintiff.

57.    As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiff suffered violation of her constitutional rights, and suffered damages as set forth herein.

58.    Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiff pursuant to respondeat superior.

59.    Plaintiff is entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, Plaintiff prays for relief, as hereinafter set forth.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES - 12

JURY DEMAND

60.   Plaintiff hereby demands a jury trial in this action.

PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1.   For general damages in a sum of $500,000.00;

2.   For special damages in a sum according to proof;

3.   For punitive damages in a sum according to proof;

4.   For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.   For injunctive relief pursuant to California Civil Code Section 52.1, enjoining Defendant CITY OF OAKLAND from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant CITY from conducting unreasonable searches against persons;

6.   For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

7.   For violation of California Civil Code Section 52(b), punitive damages against Defendant police officers, $25,000.00 for each violation of California Civil Code section 51.7, and for reasonable attorney's fees

8.   For cost of suit herein incurred; and

9.   For such other and further relief as the Court deems just and proper.


Dated:  December 4, 2007

**The Law Offices of John L. Burris**

/s/

John L. Burris, Esq.
Attorney for Plaintiff