# CLAIM AGAINST THE CITY OF OAKLAND

Please return the completed form to the Office of the City Attorney, One Frank H. Ogawa Plaza, 6th Floor, Oakland, CA 94612. Additional sheets may be attached as necessary. Enclose a **postage paid envelope** if you require a filing receipt.

RECEIVED
OAKLAND CITY ATTORNEY
07 MAY 10 PM 1:45
PERSONAL ☒  MAIL ☐

1) CLAIMANT'S NAME: "Jane Doe" (Claimant is fictitiously named) See attached.

2) ADDRESS: see attached.    City:_____ State:_____ Zip:_____

HOME #: See Attached        DRIVER'S LICENSE:_____
WORK #:_____               SOCIAL SECURITY #:_____
DATE OF BIRTH:_____
AUTO INSURANCE NAME AND POLICY #_____
(if applicable)

3) IF AMOUNT CLAIMED IS LESS THAN $10,000, AMOUNT OF CLAIM: $_____
   (Attach copies of expenses substantiating the basis of computation for the **amount being claimed**)

   IF AMOUNT CLAIMED EXCEEDS $10,000, WOULD THE CLAIM BE A LIMITED CIVIL CASE (Less than $25,000)?
   Yes ___    No  X    Unsure ___

4) ADDRESS TO WHICH NOTICES ARE TO BE SENT, IF DIFFERENT FROM LINES 1 & 2:

NAME: Ben Nisenbaum, Law Offices of John L. Burris

ADDRESS: 7677 Oakport St. Ste. 1120   City: see attached   State:_____ Zip:_____

PHONE # (510) 839-5200

5) DATE OF INCIDENT: March 16, 2007    TIME OF INCIDENT: about 3:00 p.m.

SPECIFIC LOCATION OF INCIDENT* (Address): see attached.

6) DESCRIBE THE INCIDENT INCLUDING YOUR REASON FOR BELIEVING THE CITY IS LIABLE FOR YOUR DAMAGES: see attached.

7) DESCRIBE ALL DAMAGES WHICH YOU BELIEVE YOU HAVE INCURRED AS A RESULT OF THE INCIDENT: See attached

8) NAME(S) OF PUBLIC EMPLOYEE(S) CAUSING THE DAMAGES YOU ARE CLAIMING: see attached

9) WERE PARAMEDICS CALLED?_____

10) IF YOU WENT TO A DOCTOR, LIST HIS NAME, ADDRESS & TELEPHONE NUMBER:
_____

Date of 1st Visit:_____    Is there a police report on file?_____

X [signature]                                X  5/9/07
Signature of Claimant or Representative      Date

**Complete the diagram on the back of this form showing the location of the incident**
Any person who, with the intent to defraud, presents any false or fraudulent claim may be punished by imprisonment or fine or both.
**Claims must be filed within 6 months of the incident.** See Government Code §§ 900 et seq.*    (Revised 12/3/04)

EXHIBIT B

**CLAIM OF JANE DOE**
*Pursuant to Government Code § 910 et seq.*
*Submitted to the City of Oakland*

**Name of Claimant:** JANE DOE (Claimant is named fictitiously herein as "JANE DOE")

**Date, Place and Circumstances of the Occurrence:**

On March 16, 2007, at about 3:00 p.m., Claimant JANE DOE, a 23 year-old African-American woman, was stopped in her Green 2006 Nissan Altima at 29th Street and Martin Luther King, Jr. Blvd. in Oakland, California by Oakland Police Department Sergeant KIRK COLEMAN and Oakland Police Officer JOHN CHIN, who rode together in an unmarked black Oakland Police Department "task force" vehicle. Claimant had not violated any traffic laws and was unaware of any legal basis for the officers to pull her over. Nevertheless, Claimant pulled over as soon as she heard the task force vehicle's siren beep behind her.

Less than one hour before Claimant was pulled over by Sergeant COLEMAN and Officer CHIN, Claimant's mother had placed a call to the Oakland Police Department and reported to dispatch that a number of people were on the corner of Apgar Street and Martin Luther King, Jr. Boulevard. Although Claimant was unaware that her mother had made this particular phone call, Claimant's family-members have made numerous phone calls to the Oakland Police Department prior to the subject incident of March 16, 2007, to report drug-dealing in the area near their home. Claimant and her mother are known to numerous Oakland Police Department officers as being cooperative in helping to report and reduce crime in the area. Claimant and her mother have no involvement in the illicit drug activity that plagues their neighborhood, other than to report to police when they observe such illicit activity occurring. Claimant's mother is actively involved in their local neighborhood watch program, and has been encouraged by members of the Oakland Police Department to report to members of the Oakland Police Department illicit activity occurring in the neighborhood by calling certain telephone numbers provided by the Oakland Police Department. Claimant is a Skyline High School graduate who works full-time for Kodak Easy Share Gallery in Emeryville.

One week prior to the March 16, 2007 subject-incident, Claimant had oral surgery to remove two upper wisdom teeth. At the time of the of the subject-incident Claimant still had stitches in her gums, which were swollen from the surgery.

Claimant left her house shortly before 3:00 p.m. on March 16, 2007 and got into her vehicle, which was parked across the street from her residence on Apgar Street. Claimant intended to drive to a friend's house, where Claimant and several friends spend each Friday. Claimant had called her friend before she left the house to let her know she was on the way. The weather was nice, and claimant wore a hot pink Victoria's Secret top that bore the word

"Delicious", dark blue cuffed Bermuda shorts, pink shoes, and held a red purse. Claimant's hair was done in a bun.

As Claimant walked toward her parked car, a teenage boy approached her and introduced himself as "Pootie." Claimant did not know Pootie, who continued to talk to Claimant. Pootie persisted after Claimant entered her car. Pootie leaned into Claimant's window and offered to give Claimant his phone number. Claimant politely denied Pootie and told him that he was too young for her. Pootie got the message and left the car.

Claimant drove toward West Street to get on the freeway on-ramp located near 30th and West Grand Avenue, to go toward her friend's house in East Oakland. Claimant was pulled over by Sergeant COLEMAN and Officer CHIN near King and 29th Street, several blocks from her home. Several "task force" and marked Oakland Police Department black and white vehicles arrived at the scene shortly after Claimant pulled over.

A light-skinned, African-American Oakland Police officer, who Claimant later learned was Sergeant KIRK COLEMAN, walked up to Claimant's car accompanied by Officer JOHN CHIN. Both Sergeant COLEMAN and Officer CHIN had been in the task force vehicle that initiated the stop of Claimant. Inexplicably, Sergeant COLEMAN told Claimant that she did not have her seat-belt on. Claimant wore her seatbelt appropriately, and told the officer that she did indeed have her seatbelt on. Without further explanation, Sergeant COLEMAN ordered Claimant to exit the vehicle and Claimant complied. Sergeant COLEMAN then handcuffed Claimant with her hands behind her back. Officer CHIN wore a pair of latex gloves and then searched Claimant thoroughly. Claimant repeatedly asked the officers what she had done and asked why the officers were handcuffing her and searching her. Officer CHIN felt the inside part of Claimant's legs and felt around the cuffs of Claimant's Bermuda shorts. No contraband was recovered. To Claimant's shock, Officer CHIN put his hands on Claimant's belt and pulled the belt forward. Claimant was stunned and asked Officer CHIN if he intended to go into her shorts. Officer CHIN searched around the waistband and pockets of Claimant's shorts, but did not respond to Claimant's question. Officer CHIN did not reach inside Claimant's shorts.

Sergeant COLEMAN asked Claimant: "What were you doing talking to that boy?" Claimant accurately told Sergeant COLEMAN that she did not even know the boy. Sergeant COLEMAN placed Claimant in the rear of his police vehicle and asked Claimant if she had a driver's license, insurance, and registration for the vehicle. Claimant responded affirmatively and offered to retrieve the requested documents. Sergeant COLEMAN told her not to bother, and that the police would get the documents from the vehicle. Several unknown Oakland Police officers then searched and ransacked Claimant's vehicle. The officers did not open the trunk or the hood of the vehicle, but thoroughly searched the cabin of Claimant's vehicle.

Sergeant COLEMAN and Officer CHIN sat down in the front of the police vehicle and asked Claimant if she had ever been arrested before. Claimant had once been arrested on suspicion of shoplifting, and she told the officers as much. The officers did not seem concerned by the one prior arrest. The officers ran Claimant's name on their in-car computer, presumably for a warrants check, and verified that Claimant had a clean record.

Both Sergeant COLEMAN and Officer CHIN persisted in questioning Claimant about the young man who had accosted her as she got into her parked car. Claimant

repeated again that she did not know the boy. Eventually, Sergeant COLEMAN exited the vehicle and spoke to other officers at the scene. Claimant told Officer CHEN that she was extremely embarrassed by the humiliating public spectacle created by the officers search of her vehicle and detention of Claimant. Officer CHIN told Claimant that she had nothing to worry about as long as there was "nothing" in her car. The statement was made as if Claimant had no reason whatsoever to distrust the officers or their intentions.

Reason to distrust the officers and their intentions revealed itself as soon as Sergeant COLEMAN returned to the vehicle. Sergeant COLEMAN told Claimant that the officers had found "crumbs" in her car. In fact, Claimant's car had been washed and cleaned days before the incident. Claimant had no factual basis to accept Sergeant COLEMAN's representation that "crumbs" had been found in her car, whether Sergeant COLEMAN was referring to crumbs from alleged drugs, contraband, or any other material or item. Claimant's car was clean before the officers ransacked it.

Nevertheless, Sergeant COLEMAN then attempted to intimidate Claimant by telling her: "I believe 50% of your story. You're going to have to give me something." Sergeant COLEMAN appeared to Claimant to be attempting to extort information from her. Claimant told Sergeant COLEMAN that if the officers had found crumbs, it was only because the officers had put them there. Claimant asked the Sergeant COLEMAN, "You found crumbs of what?"

Sergeant COLEMAN responded: "What are you doing driving a car like this. What do you do for a living? How old are you? I can arrest you for possession for sales. Did you swallow it? We're waiting on the tester kit. You better not be lying."

Claimant asked Officer CHIN what Sergeant COLEMAN was doing. Officer CHIN asked Claimant if she had "worked out a deal" with Sergeant COLEMAN. Claimant felt that the officers were trying to turn her into some kind of snitch. It was clear to Claimant that the officers had no idea that she was in fact a person who freely and voluntarily cooperated with the police in their law enforcement efforts in her neighborhood. Claimant was offended that the officers felt the need to trump up a case to try and blackmail her, when not only was she not involved in criminal activity, but already helped the police.

Sergeant COLEMAN removed Claimant from the rear of the police vehicle and removed the handcuffs. Claimant told Sergeant COLEMAN that she was upset. She walked to her car and observed police officers scooping something from the backseat floor of her car. Claimant was shocked, because there had been nothing to scoop in her car when she was pulled over by Sergeant COLEMAN. Claimant cried in frustration while Sergeant COLEMAN told her that he needed to take her picture. Sergeant COLEMAN also told Claimant that he may need her to testify and asked if she would testify. Claimant asked why she would need to testify.

Sergeant COLEMAN ordered Claimant to open her mouth. He asked Claimant if she had been punched her face. Claimant told the Sergeant that her wisdom teeth had been removed. Sergeant COLEMAN maliciously and falsely told Claimant that she had white powder on her face. He asked Claimant if she had swallowed drugs. Claimant was insulted and told Sergeant COLEMAN that he could drug test her then and there, that she did not do drugs. Sergeant COLEMAN did not accept Claimant's offer to be drug-tested.

Claimant called her mother and told her that officers were attempting to link her to some alleged drugs. Claimant's mother came outside of her house and saw that police

officers had detained a number of people near her home on Apgar Street. Claimant's mother approached some officers and asked if they knew where her daughter was. The officers told Claimant's mother that Claimant had been arrested. Claimant's mother drove to King and 29th Street, where she saw her daughter and several Oakland Police officers, including Sergeant COLEMAN, along with a crowd of people who had gathered.

Claimant told her mother what had transpired, and Sergeant COLEMAN told Claimant and her mother that if the crumbs allegedly recovered by the officers tested positive for drugs that a warrant would be issued for Claimant's arrest. Claimant walked away in tears, and Officer CHIN told her not to worry, that Sergeant COLEMAN was only trying to scare her. Claimant replied, "well, he did a good job of that." Officer CHIN then took a statement from Claimant regarding her contact with "Pootie." While the statement was correct, it was incomplete in that it did not address the stop and search complained of by Claimant. Claimant signed the statement prepared by Officer CHIN and was released at the scene without a citation. Claimant's mother told the officers that she had called the police to report suspected drug dealers in the area shortly before her daughter had left the house. Sergeant COLEMAN told Claimant's mother, "That's what sent us out here."

Claimant alleges, on information and belief, that Sergeant COLEMAN, Officer CHIN, and DOES 1-10, had insufficient information, and no particularized facts, to support their stop and search of Claimant and her vehicle.

The search of Claimant described herein was done without any just provocation or cause, proximately causing Claimant's injuries and resulting damages.

Claimant alleges on information and belief that Sergeant COLEMAN and Officer CHIN performed the intrusive public search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

The actions and omissions of the CITY OF OAKLAND, Sergeant COLEMAN and Officer CHIN were objectively unreasonable under the circumstances, without probable cause or consent or other legal right, done under color of law, within the course and scope of their employment as law enforcement officers and/or public officials, and pursuant to unconstitutional customs, policies and procedures of the City of Oakland and/or other jurisdictions. The City of Oakland was also responsible for Claimant's injuries through its own acts and omissions, negligent and otherwise, by failing to properly and adequately investigate, train, supervise, monitor, instruct, and discipline its law enforcement officers and/or employees and agents, including the officers and officials described herein.

The actions and omissions of Respondents constitute violations of Claimant's rights under the United States and California Constitutions, Civil Code §§ 43, 51.7, 52.1, 51.9, 52.4, 1708, 1708.5, 1708.8, Cal. Penal Code §§ 853.6, 4030, and other provisions of California codes and law, assault and battery, intentional infliction of emotional distress, invasion of privacy, negligent infliction of emotional distress, negligence, intentional torts, and other causes of action arising from this incident.

**Claimant's Injuries and Amount of Damage Claimed:**

Claimant sustained serious injuries, including but not limited to invasion of privacy, excessive detention, intimidation, fear,, violation of rights, psychological injuries, and advantages, and other injuries and damage. Claimant's damages are in excess of the minimum jurisdictional limits of the Alameda County Superior Court, and include physical pain and suffering, emotional distress, medical expenses, violation of rights, civil penalties, and exemplary and punitive damages.

Claimant claims compensatory, exemplary, and punitive damages, civil penalties, costs, interest, and attorneys' fees, and all other relief allowed by law in excess of $25,000.00.

Claimant further demands the return of the photograph taken of her at the scene of the incident, along with any and all copies of said photograph.

**Identities of Public Employees Involved:**

The officers involved in the wrongful conduct toward Claimant include the CITY OF OAKLAND, Oakland Police Officers COLEMAN, CHIN, DOES 1-25, other currently unidentified individuals, and all officers, officials, and individuals involved in the detention, interrogation and search of Claimant and her vehicle at the location and time period described herein. The names and identities of any other officers and individuals, if there are any, are unknown to Claimant at this time.

**Person to Contact Regarding this Claim:**

Please contact Claimant's attorney, Ben Nisenbaum, Law Offices of John L. Burris, Airport Corporate Centre, 7677 Oakport Street Suite 1120, Oakland, CA 94621, (510) 839-5200.

Dated: May 9, 2007

By: _____
Ben Nisenbaum
Attorney for Claimant